THOMAS A. JOHNSON, #119203
KRISTY M. KELLOGG, #271250
Johnson, Greene & Roberts LLP
400 Capitol Mall, Suite 1620
Sacramento, California  95814

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No.: 2:11-cr-00511-WBS |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| ANTHONY JOACHIM, | ) | |
| Defendant. | ) | Date: September 12, 2016<br>Time: 9:00 a.m.<br>Judge: William B. Shubb |

## I – SENTENCING MEMORANDUM

The Pre-Sentence Report ("PSR") recommended a sentence of time served with home detention and community service based upon a Total Offense Level of 14 and a Criminal History Category I.  Defendant respectfully requests the Court follow the PSR's sentence recommendation. Defendant submits the following Sentencing Memorandum:

## II - A DOWNWARD DEPARTURE IS WARRANTED UNDER 18 U.S.C. § 3553(A) FACTORS

The plea agreement allows Mr. Joachim to argue based upon the sentencing factors in 18 U.S.C. § 3553(a).  Given the characteristics of Mr. Joachim, and the nature and circumstances of this case, we are requesting that the Court follow the PSR's recommended sentence of time served (1 day), with a fine of $38,572, and 150 hours of community service.  Such a sentence sufficiently takes into consideration the goals of sentencing and provides an appropriate punishment for Mr. Joachim.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). The sentence should 1) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2).

A.   **The History of Mr. Joachim**[1]

October 24, 2005 marked a turning point in Mr. Joachim's life. It was his last night in Stockton. His ex-wife lived in Carlsbad with their three children and he wanted to move closer to his kids. He decided to rent a limo and invite a few people out to celebrate with him for one last night before he moved. The limo driver missed the destination and so they just had him park across the street. As Mr. Joachim was walking through the crosswalk, a drunk driver hit him. Police estimate that the driver was driving at a speed in excess of 50 miles per hour and Mr. Joachim's body was launched 65 feet. The driver was so intoxicated that he was not even aware that he hit anyone.

Mr. Joachim was pronounced dead at the scene. Mr. Joachim was transported to a teaching hospital in Stockton. At the time, he had just re-written his will which contained a do not resuscitate clause. However, it was sitting in his attorney's office unsigned, so legally the hospital had to continue to try to revive Mr. Joachim. It is unknown how long Mr. Joachim was dead, but he was somehow revived. The doctors and staff in the ER nicknamed him "Rocky" because he was a fighter. Despite all medical logic, he continued to hang on and live despite flat-lining on several occasions.

Eventually, the doctors were able to stabilize him but, because his injuries were so severe, he was induced into a coma for 3 months. After about 2 weeks in the hospital, he

---

[1] This information was obtained from Mr. Joachim's mother, Teri Conrad, through interviews and her letter she submitted to the court.

- 2 -

1  developed some sort of flesh eating infection and the doctors told his children to fly up
2  from Carlsbad to say their goodbyes.  Yet again, Mr. Joachim continued to live.
3  However, essentially just about every part of his body was broken or damaged - broken
4  neck, both femurs broken, his knee was hanging by a thread, his feet were shattered into
5  over 300 pieces, and he lost my vision and became blind. His abdomen had been splayed
6  open and much of his colon needed to be removed, and doctors had to keep his stomach
7  open so it could heal from the inside out.  Mr. Joachim needed a colostomy bag and so
8  much E. coli was spread throughout the inside of him it took over 6 years for it to clear
9  out of his body.

10       After Mr. Joachim woke up from the coma, he did not improve in 3 months and
11  the hospital sent home in wheelchair, unable to walk, and blind.  In the blink of an eye
12  and through no fault of his own, Mr. Joachim went from a healthy, successful real estate
13  agent to a disabled lump of a human being.  He was traumatized by the accident and
14  depressed about being disabled.  Mr. Joachim was always so independent and now he had
15  to depend on others to do basic daily tasks like a baby.  He was miserable and his road to
16  recovery was long and both emotionally and physically draining.  He has had over 200
17  surgeries and he still needs more.  After numerous eye surgeries, he was able to salvage
18  vision in one eye using a specialized glass contact lens.   Soon he will need another eye
19  surgery that will render him blind for six months while he heals.  The bones in one of his
20  feet and ankle are dead and the bone in his leg is dying too.  Doctors have suggested that
21  he may need to amputate that leg.  Mr. Joachim had been postponing any additional
22  surgeries while this case has been pending in the event he had to go to prison.

23       To add insult to injury, the person that hit Mr. Joachim was minimally insured and
24  had 3 prior DUIs.  At the time of the accident, prosecutors were unsure if Mr. Joachim
25  was going to survive so only a DUI with injury was filed and the driver bailed out of jail
26  and fled the country.  The driver was never apprehended and never held to answer for his
27  crimes.

28

A close friend of Mr. Joachim's, Mark Dentoni, had 4 hip replacements, so knew the struggles with depression one has when becoming disabled. Mark knew how to help with rehabilitation since he had previously been through so much physical therapy. He encouraged him not to give up and to try to rehabilitate myself and helped him re-learn how to walk again. While Mr. Joachim is unsteady on his feet and requires orthopedic shoes, he can walk again.

Once Mr. Joachim slowly crawled his way back to recovery, he hit another road bump. He needed to find a way to provide for his family. Given that fact that he could no longer read contracts or walk much, he could not resume my job as a real estate agent. So he did what he could do and bought foreclosure houses that he could try and flip or rent out. Mr. Joachim was desperate and not thinking clearly after his accident and made poor choices.

B.    The Characteristics of Mr. Joachim

As evidenced by Mr. Joachim's letters of support, the conduct that occurred in this case was out of character for Mr. Joachim. Even prior to his horrific accident, Mr. Joachim was always a kind and generous man. Mr. Joachim's mother, Teri Conrad, wrote and compelling letter in which she shares the depth of Mr. Joachim's kindness she learned of after his accident:

> I would like to share with you an account of Tony's character, as told to me by hundreds of people that visited him during his three-month hospital stay in ICU.  During the first days after the accident, hundreds of people came to the hospital to stand vigil for him.  Friends, clients, formal teachers, coaches, business leaders, co-workers, neighbors and other acquaintances were positioned in the hospital lobby, in the halls, and near the ICU ward, and outside in the cold, all waiting for word on Tony's condition. Many of these people spent time with me, and they each had a "Tony" story to tell. As the days turned into months, more people came to share their stories, and I was surprised, humbled and extremely proud of the compassionate and generous man that they described.  His kindness was extraordinary.

- Elderly people told me how he had worked diligently to sell their home and find them another one as they downsized into retirement.
- Young couples told me how he helped them purchase their first home and even cut his commission to save them money.
- Business associates shared how he always took care of his clients and was loved by everyone.
- His tenants told me how generous and understanding he was, willing to wait on rent payments and work with them if they fell on hard times.
- Homeless people came to visit and told me how he had saved them from going hungry, giving them money until they could get back on their feet.

Numerous other people wrote to Mr. Joachim's character as someone who was always very generous and willing to help anyone in need.

Mr. Joachim is a devoted father. He feels remorseful about the negative impact this case has had on his family and children and is more concerned about them than himself and his well-being if sentenced to prison.

## III – CONCLUSION

There is no doubt that Mr. Joachim has suffered immensely for his actions. As can be seen in Mr. Joachim's letter to the Court, Mr. Joachim recognizes that no one is more responsible than himself for his current situation. We are asking the Court to take into account the impact on his family's life for the past five years. His children have been struggling as the result of these events in his life and he does not want them to suffer any further.

Mr. Joachim currently receives permanent disability payments as the result of his accident. If Mr. Joachim were to go to prison, he will lose his disability payments while in prison and be forced to re-apply if his prison sentence is longer than one year.

Given the characteristics of Mr. Joachim, and his current medical condition, we are hoping you find a downward variance is warranted and follow the recommendation of the PSR and sentence him to credit for time served with community service and a fine.

DATED: September 6, 2016

Respectfully submitted,

/s/ Thomas A. Johnson
THOMAS A. JOHNSON
Attorney for Anthony Joachim


/s/ Kristy M. Kellogg
KRISTY M. KELLOGG
Attorney for Anthony Joachim